UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/14/2022___

---

BRETT WHEELER,

       Plaintiff,

    -against-

CAPT. HARPER, 1159 Badge, C.O. Harper, 1195
Badge, and C.O. Gonzalez, 8465 Badge,

        Defendants.

---

1:19-cv-09689 (MKV)

**OPINION AND ORDER
GRANTING
MOTION TO DISMISS AND
DISMISSING WITH PREJUDICE
SECOND AMENDED
COMPLAINT**

MARY KAY VYSKOCIL, United States District Judge:

  This Matter comes before the Court on the motion of Defendants Captain Dymita Harper,

Corrections Officer ("CO") Justin Gonzalez, and CO Jasmine Roberts (collectively,

"Defendants"), to dismiss with prejudice the Second Amended Complaint (SAC [ECF No. 27])

filed by incarcerated Plaintiff Brett Wheeler, who is proceeding *pro se*.  [ECF No. 41].  For the

reasons discussed below the Motion to Dismiss is granted in all respects.

## BACKGROUND

 **I.**  **Procedural History**

  **A.  Initial Complaint**

  Plaintiff, proceeding *pro se*, initiated this action by filing a Complaint on October 16,

2019.  (Compl. [ECF No. 2]).  Plaintiff alleged that on June 6, 2018, while he was a pre-trial

detainee incarcerated at the Anna M. Kross Center ("AMKC") on Rikers Island, another inmate

threw hot water on him.  (Compl. at 4).  He alleged that he was not properly protected by a "John

Doe" correction officer.   (Compl. at 3–4).

  On November 26, 2019, the Court entered an Order holding that the Complaint failed to

state a claim upon which relief could be granted and granting Plaintiff leave to amend.  [ECF No.

6].  The Court construed Plaintiff's Complaint as asserting claims that correction officers were deliberately indifferent to the conditions of his confinement that posed a serious threat to his health or safety in violation of the Fourteenth Amendment.  [ECF No. 6].  However, with respect to the allegations that a "John Doe" officer failed to protect him, Plaintiff alleged no facts showing that any officer knew of an excessive risk to Plaintiff's health and safety and failed to take reasonable measure to protect him.  [ECF No. 6].  With respect to the allegations that he was denied proper medical care, Plaintiff alleged no facts suggesting that he suffered from a "sufficiently serious" medical condition or that any officer or medical staff "recklessly failed to act with reasonable care to mitigate the risk" of harm.  [ECF No. 6].

The Court granted Plaintiff leave to amend and explained in detail how Plaintiff could cure the deficiencies in his Complaint.  [ECF No. 6].  The Court explained that should Plaintiff amend his Complaint, "he must allege sufficient facts suggesting that correction officials were deliberately indifferent because they knew of a specific serious risk to Plaintiff's safety during his detention and took no action to prevent it."  [ECF No. 6].  Moreover, he "must name as defendants the individuals who failed to protect him from harm and allege facts showing how each person was personally involved."  [ECF No. 6].  With respect to his claim for inadequate medical care, the Court explained that Plaintiff "must also allege facts showing that he had a condition that posed a serious risk to his health or safety and that correction or other staff members intentionally or recklessly denied him medical attention."  [ECF No. 6].  Moreover, "Plaintiff must describe his serious medical conditions, name as defendants the individuals who denied or interfered with his medical needs, and allege what each defendant did to violate his rights."  [ECF No. 6].

### B. Amended Complaint

On April 20, 2020, Plaintiff filed an Amended Complaint.  (Amended Compl. [ECF No. 10]).  In that Amended Complaint, Plaintiff reiterated his allegations that another AMKC detainee threw hot water on him on June 6, 2018.  (Amended Compl. at 4).  Plaintiff further alleged that "[he] was bleeding from [his] chest and [he] never received any type of medical attention.  The officers told [him] to take a shower . . . and the officer threatened [him]" to not say anything.  (Amended Compl. at 4).

The Court subsequently issued a *Valentin* Order, directing the New York City Law Department to ascertain the identity of the John Doe whom Plaintiff seeks to sue and the address where the defendant may be served.  [ECF No. 12].  On August 21, 2020, the New York City Law Department filed a letter report informing the Court that it was unable to identify the New York City Department of Correction ("DOC") employee whom Plaintiff describes in his Amended Complaint.  [ECF No. 19].  Instead, the Law Department was able to identify, upon information and belief, several individuals as being in or near the area where the inmate altercation alleged in the Amended Complaint occurred.  [ECF No. 19].

On October 19, 2020, the Court ordered Plaintiff to file a second amended complaint that either provided additional details about the John Doe defendant, so that the Law Department could identify that individual, or named a defendant or defendants.  [ECF No. 20].

### C. Second Amended Complaint

On March 8, 2021, Plaintiff filed the SAC.  (*See* SAC).  In the SAC, Plaintiff now alleges that on October 16, 2019, an inmate threw hot water on him and burned him.  (SAC at 4).  Plaintiff alleged that "Capt. Harper[,] Badge # 1159[,] corrections officer Harper[, Badge] #

1195[,] and officer Gonzalez[,] Badge # 8465" "were involved" because "these are who worked

on the date of the incident."  (SAC at 4).

    Before summonses were issued, the Office of the Corporation Counsel notified the Court

that there was no correction officer at DOC with the last name Harper and the shield number

1195.  [ECF No. 31].  However, the Office of the Corporation Counsel identified CO Jasmine

Roberts as an officer who was assigned to the same facility where plaintiff was housed in

October 2019 and whose shield number is 1195.  [ECF No. 31].

### D.  Motion To Dismiss

    On August 18, 2021, pursuant to the Court-endorsed briefing schedule, Defendants

served and filed their Motion to Dismiss.  [ECF No. 40].  In support of their Motion, Defendants

filed a memorandum of law.  (Def. Br. [ECF No. 42).

    Plaintiff's opposition was due by October 1, 2021, [ECF No. 39], however, no opposition

was filed by that date.  As such, on October 12, 2021, the Court extended Plaintiff's deadline to

file his opposition to November 12, 2021.  [ECF No. 43].  The Court admonished Plaintiff that

"[f]ailure to file an opposition to Defendants' Motion to Dismiss on or before November 12,

2021 may result in the Court deciding Defendants' Motion to Dismiss unopposed."  [ECF No.

43].  To date, Plaintiff has still not filed an opposition to Defendants' Motion to Dismiss.

### II.   Factual Background[1]

    The SAC alleges that on October 16, 2019, plaintiff was in the dayroom in the "Rikers

Island C-95 Building" when another inmate threw hot water on him, causing burns to his chest

and right arm.  (SAC at 4).  Plaintiff alleges that "Capt. Harper[,] Badge # 1159[,] corrections

---

[1] Unless otherwise noted, the facts are taken from the SAC, and are accepted as true for the purposes of this motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, this Court need not "accept as true all of the [legal conclusions] contained in a complaint."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

officer Harper[, Badge] # 1195[,] and officer Gonzalez[,] Badge # 8465" were "involved"

because they "worked on the date of the incident."  (SAC at 4).

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*,

556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is

plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555 (alterations, internal quotation marks, and citations

omitted).

Where, as here, a motion to dismiss a complaint is unopposed, lack of an opposition is

not, on its own, sufficient to dismiss the case.  "[T]he sufficiency of a complaint is a matter of

law that the court is capable of determining based on its own reading of the pleading and

knowledge of the law."  *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).  Accordingly, a

court must determine whether dismissal is appropriate on the merits, as "the plaintiff's failure to

respond . . . does not warrant dismissal."  *Id.* at 323.

A complaint filed by a *pro se* plaintiff "must be construed liberally with 'special

solicitude' and interpreted to raise the strongest claims that it suggests."  *Hogan v. Fischer*, 738

F.3d 509, 515 (2d Cir. 2013) (citing *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)); *see also*

*Wilson v. Dalene*, 699 F. Supp. 2d 534, 554 (E.D.N.Y. 2010) (noting that courts are "required to

5

afford [a *pro se* plaintiff] leniency, holding his complaint to 'less stringent standards than formal pleadings drafted by lawyers'" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). Nevertheless, the complaint must satisfy the *Twombly-Iqbal* plausibility standard.  *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80–81 (2d Cir. 2020).  "[A] *pro se* plaintiff must support his claims with 'specific and detailed factual allegations, not stated in wholly conclusory terms.'"  *Wightman–Cervantes v. ACLU*, No. 06 Civ. 4708, 2007 WL 1805483, at *1 (S.D.N.Y. June 25, 2007) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir. 2000)).

## DISCUSSION

Section 1983 allows an individual to bring suit against persons who, acting under color of state law, have caused him to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws of the United States." 42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988).  The Court liberally construes the SAC as asserting a failure to protect claim and a deprivation of adequate medical care claim, under 42 U.S.C. § 1983, arising out of the incident that occurred in the day room of Rikers Island where an inmate threw hot water on Plaintiff.  (*See* SAC at 4).

However, as a preliminary matter, the SAC is unclear as to whether, at the relevant time, Plaintiff was a pretrial detainee or a convicted prisoner.  In his initial Complaint, Plaintiff alleged that he was a pretrial detainee at the time of the incident on June 6, 2018.  (Compl. at 4). However, Plaintiff's SAC alleges an incident that occurred on a different day, October 16, 2018. (SAC at 4).  Plaintiff does not specify whether on that date he was a pretrial detainee or a convicted prisoner.  (SAC at 4).

With regard to conditions of confinement, the Eighth Amendment protects the rights of a convicted prisoner, while the Fourteenth Amendment protects the rights of a pretrial detainee.

*See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (in contrast to a sentenced prisoner, whose conditions of confinement are analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment, "the proper inquiry [for a pretrial detainee] is whether conditions [of confinement] amount to punishment of the detainee" under the Due Process Clause of the Fourteenth Amendment); *Molina v. Cty. of Westchester*, No. 16 CV 3421 (VB), 2017 WL 1609021, at *2 (S.D.N.Y. Apr. 28, 2017) ("A claim for deliberate indifference brought by a convicted prisoner 'is analyzed under the Eighth Amendment,' whereas '[a] pretrial detainee's claims . . . are governed by the Due Process Clause of the Fourteenth Amendment." (internal citations omitted)).  Because the Court must interpret *pro se* Plaintiff's SAC to raise the strongest claims that it suggests, the court will consider the sufficiency of Plaintiff's claims under both the Fourteenth and Eighth Amendments given the lack of clarity regarding his status at the time of the alleged incident.

## I.   Plaintiff Fails To Plead A Failure to Protect Claim

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  However, "not every injury that a prisoner suffers at the hands of another [prisoner] results in constitutional liability."  *Taylor v. City of New York*, No. 16-CV-7857 (NRB), 2018 WL 1737626, at *11 (S.D.N.Y. Mar. 27, 2018) (citing *Farmer*, 511 U.S. at 834).  To plead a failure to protect claim, an inmate must allege that prison officials "act[ed] with 'deliberate indifference to a substantial risk of serious harm to an inmate.'"  *Taylor*, 2018 WL 1737626, at *11; *Luckey v. Jonas*, No. 18CIV8103ATKNF, 2019 WL 4194297, at *3 (S.D.N.Y. Sept. 4, 2019) (to state a claim for a failure to protect, a plaintiff must plead that "the officer acted with 'deliberate indifference to a substantial risk of serious harm to an inmate'" (quoting *Rosen v. City of New York*, 667 F. Supp. 2d 355, 360–61 (S.D.N.Y.

2009))).  The two-pronged framework for claims of deliberate indifference set forth in *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017) "applies with equal measure to failure to protect claims." *Luckey*, 2019 WL 4194297, at \*3; *Taylor*, 2018 WL 1737626, at \*12 ("Although *Darnell* involved a Fourteenth Amendment challenge to a prisoner's conditions of confinement, its holding applies with equal measure to failure to protect claims.").  A plaintiff must therefore plead "(1) that the failure to intervene or protect the inmate was sufficiently serious such that it caused an unquestioned and serious deprivation of basic human needs and (2) that the defendant acted with a sufficiently culpable state of mind." *Luckey*, 2019 WL 4194297, at \*3 (quoting *Corley v. City of N.Y.*, No. 14 Civ. 3202, 2017 WL 4357662, at \*12 (S.D.N.Y. Sept. 28, 2017)). Plaintiff has not pleaded sufficient factual allegations to satisfy either prong.

## A.  Sufficiently Serious Constitutional Deprivation

Under certain circumstances, the failure of a correction officer to intervene in an attack may create "a condition which poses a substantial risk of serious harm thus constituting a sufficiently serious constitutional violation." *Molina*, 2017 WL 1609021, at \*3.  The inquiry is whether the risk of an inmate's violence against other inmates poses a "substantial risk of serious harm," "not the extent of the physical injuries sustained in an attack." *Blake v. Kelly*, No. 12 Civ. 7245, 2014 WL 4230889, at \*5 (S.D.N.Y. Aug. 26, 2014) (internal quotation marks and citation omitted).  A substantial risk of serious harm can be demonstrated where there is "evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker," *Gilmore v. Rivera*, No. 13 Civ. 6955, 2014 WL 1998227, at \*3 (S.D.N.Y. May 14, 2014), or where there is evidence that "officers witnessed [an] assault, but failed to intercede to stop it,"

*Blake*, 2014 WL 4230889, at *5; *Luckey*, 2019 WL 4194297, at *4 (denying a Motion to Dismiss where a plaintiff alleged that Defendants did nothing to stop an attack that lasted an hour).

Plaintiff has not pled any facts to support that the circumstances here created a condition which posed a substantial risk of serious harm. Plaintiff does not allege that he had ever had an altercation with the inmate who threw water on him nor does he allege that he ever requested to be separated from him. (*See* SAC). There is noting in the SAC suggesting that corrections officers knew or had reason to know of any risk of harm. Moreover, the incident itself, throwing hot water on the Plaintiff, was instantaneous, which would not have given any officers an opportunity to intercede to stop it. As such, Plaintiff has failed to plead that the circumstances here created a condition which posed a substantial risk of serious harm.

### B. Deliberate Indifference

The standards for deliberate indifference differ for convicted prisoners and pretrial detainees. *See Darnell*, 849 F.3d at 32–36.

For convicted prisoners, to whom the Eighth Amendment applies, a corrections officer acts with deliberate indifference when he subjectively "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). The officer "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000).

However, for pretrial detainees, to whom the Fourteenth Amendment applies, the second prong "of a deliberate indifference claim is defined objectively." *Darnell*, 849 F.3d at 35. A "pretrial detainee must prove that the defendant-official acted intentionally . . . or recklessly

failed to act with reasonable care to mitigate the risk . . . even though the defendant-official

knew, or should have known," of the risk of harm.  *Id.*  Thus, unlike the Eighth Amendment, the

Due Process Clause of the Fourteenth Amendment "can be violated when an official does not

have subjective awareness that the official's acts (or omissions) have subjected the pretrial

detainee to a substantial risk of harm."  *Id.*

Plaintiff cannot establish deliberate indifference under either standard.  Plaintiff merely

alleges that the Defendants "worked on the date of the incident."  (SAC at 4).  Plaintiff alleges no

facts to support that any of the Defendants either subjectively knew of a substantial risk of harm

or objectively should have known of a substantial risk of harm to Plaintiff.

Even, construing plaintiff's allegations liberally and drawing all reasonable inferences in

his favor, the Court concludes Plaintiff has not plausibly alleged facts which state a failure to

protect claim.

## II.     Plaintiff Fails To Plead A Deprivation Of Adequate Medical Care Claim

The Eighth and Fourteenth Amendments forbid deliberate indifference to serious medical

needs of prisoners.  *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir.

2013) (Eighth Amendment); *Charles v. Orange Cty.*, 925 F.3d 73, 87 (2d Cir. 2019) (Fourteenth

Amendment).  To state a claim for deliberate indifference to serious medical needs, a plaintiff

must satisfy a two-pronged test.  First, "the alleged deprivation of adequate medical care must be

'sufficiently serious.'"  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer*,

511 U.S. at 834).  Second, the defendant must act with a "sufficiently culpable state of mind."

*Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

The Court need not decide whether the SAC adequately alleges a "sufficiently serious"

medical need because it clearly does not adequately allege that Defendants acted with a

"sufficiently culpable state of mind."  As discussed in Part I.B. *supra*, Plaintiff has not alleged

any facts to establish that Defendants acted with a culpable state of mind.  He merely alleges that

Defendants "worked on the date of the incident."  (SAC at 4).  However, this allegation does not

adequately support a plausible claim that Defendants failed to act with reasonable care to address

a risk of which they either knew or should have known.

Construing plaintiff's allegations liberally and drawing all reasonable inferences in his

favor, the Court concludes Plaintiff has not plausibly alleged facts from which a deprivation of

adequate medical care claim could be inferred.

### III.    Dismissal Of The Second Amended Complaint Is With Prejudice

"A *pro se* complaint should not be dismissed without the Court granting leave to amend

at least once when a liberal reading of the complaint gives any indication that a valid claim might

be stated."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted).

However, "even the special solicitude afforded to *pro se* litigants does not entitle Plaintiff to file

an infinite number of amended pleadings."  *Boykin v. Moreno*, No. 17-CV-6869 (KMK), 2020

WL 882195, at *8 (S.D.N.Y. Feb. 24, 2020).  This is especially true where "Plaintiff has fixed

virtually none of the deficiencies highlighted by the Court in its" prior opinions and orders.  *Id.*

Under such circumstances, Courts in this district routinely dismiss a Plaintiff's amended

pleadings with prejudice.  *See Al-Qadaffi v. Servs. for the Underserved (SUS)*, No. 13CV8193,

2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015), *aff'd sub nom. Al-Qadaffi v. Servs. for the*

*Underserved*, 632 F. App'x 31 (2d Cir. 2016) (dismissing a *pro se* plaintiff's claim with

prejudice where he "already had one chance to amend his Complaint, and there is still no

indication that a valid claim might be stated if given a second chance"); *Boykin*, 2020 WL

882195, at *8 (dismissing a plaintiff's fourth amended pleadings); *Johnson v. Doty*, No. 15-CV-

7823, 2019 WL 2137361, at *7 n.8 (S.D.N.Y. May 16, 2019) (dismissing *pro se* complaint where a plaintiff already had three previous "bites at the apple" that all "prove[d] fruitless" (citation and quotation marks omitted)).

Plaintiff has already had two opportunities to amend his Complaint and has failed to adequately plead a claim against any defendant. This is particularly troubling where the Court has provided specific guidance on how Plaintiff could cure the deficiencies in his prior pleadings. In the Court's Order granting Plaintiff leave to amend his initial Complaint, the Court explained in detail how Plaintiff could cure the deficiencies in his Complaint. [ECF No. 6]. For a claim for a failure to protect, the Court explained that Plaintiff needed to "allege sufficient facts suggesting that correction officials were deliberately indifferent because they knew of a specific serious risk to Plaintiff's safety during his detention and took no action to prevent it" and that "[he] must name as defendants the individuals who failed to protect him from harm and allege facts showing how each person was personally involved." [ECF No. 6]. For a potential claim for inadequate medical care, the Court explained that Plaintiff "must also allege facts showing that he had a condition that posed a serious risk to his health or safety and that correction or other staff members intentionally or recklessly denied him medical attention" and that "Plaintiff must describe his serious medical conditions, name as defendants the individuals who denied or interfered with his medical needs, and allege what each defendant did to violate his rights." [ECF No. 6].

Given Plaintiff's repeated failure to adequately plead a claim plausibly suggesting liability against any DOC employee despite the Court's specific guidance on how to do so, there is no indication that a third amended complaint would state a valid claim. As such, the SAC is dismissed with prejudice and without leave to further amend the complaint.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss, [ECF No. 41] is GRANTED.  Plaintiffs' Second Amended Complaint, [ECF No. 27] is DISMISSED WITH PREJUDICE.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *Cf. Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is respectfully requested to terminate docket entry 41 and to close this case.

The Clerk of Court is also respectfully requested to mail a copy of this Opinion and Order to the *pro se* Plaintiff at the address of record.

**SO ORDERED.**

**Date:  March 14, 2022**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**